IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OMAR WILSON,<br><br>                     *Plaintiff,*<br><br>   v.<br><br>CHESTER TOWNSHIP POLICE DEPARTMENT, *et al.*,<br><br>                     *Defendants.* | CIVIL ACTION<br>NO. 22-949 |

**PAPPERT, J.**                                                                                    **April 28, 2023**

### MEMORANDUM

      Omar Wilson's Amended Complaint recounts, in largely irrelevant detail, a series of interactions he had with Chester Township police officers from 2017 to 2022. (ECF 10.) On August 25, 2022, Chester Township Police Department and Defendants Kenneth Coalson, Laura Dixon, Merrit Harman, Raymond Lare and Tamara Paden moved to dismiss the Amended Complaint. (ECF 12). Wilson then sought leave to amend his pleading a second time on September 21 but failed to attach his proposed changes. (ECF 13.) The Court denied Wilson's Motion for Leave on March 13, 2023 but allowed him to try again with a proposed second amended complaint attached. (ECF 18). He did so on April 13, 2023, and Defendants opposed Wilson's effort to amend again. (ECF 19, 20). Wilson did not respond to Defendants' Motion until November 2, 2022. (ECF 16).

      The Court denies Wilson's Motion for Leave to Amend and grants Defendants' Motion to Dismiss the Amended Complaint. Wilson will be given a final opportunity to amend those claims which are dismissed without prejudice, as specified in more detail

below and in the accompanying Order. He must do so no later than June 27, 2023. All time-barred federal claims, as well as the purported False Claims Act allegations, are dismissed with prejudice and the Court declines supplemental jurisdiction over any state law claims.

I

A

Because Defendants do not consent and Wilson has amended once before, the Court must determine whether leave to amend is appropriate. Fed. R. Civ. P. 15(a)(2). Courts should "freely" grant leave when "justice so requires," and this mandate is "to be heeded." *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). In the absence of substantial or undue prejudice, denial "instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

B

In his initial request for leave, Wilson noted that amendment would allow him to "detail[]" some claims "more precisely" and add additional defendants. (ECF 13). The proposed second amended complaint adds three parties, more claims against existing individual defendants, and another *Monell* claim against the Chester Township Police Department. *See* (Prop. Sec. Am. Compl.). Wilson does not explain why these parties and allegations were not included in previous iterations of his complaint, but the proposed amendments are futile in any event.

A court may deny a request for leave to amend based on futility "only where the complaint, as amended, would fail to state a claim upon which relief could be granted." *Harris v. Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) (citing *Anderson v. City of Philadelphia*, 65 F. App'x 800, 801 (3d Cir. 2003). For the reasons discussed in Section II, *infra*, the federal claims in Wilson's Amended Complaint are either time-barred, fail to state a claim, or both. For the same reasons, the additional allegations in his proposed second amended complaint would fail to state a claim upon which relief could be granted.

## II

Wilson's Amended Complaint, written mostly in prose, identifies sixteen incidents that occurred on fifteen separate days over five years. He alleges these incidents give rise to thirty-four claims: ten "violations of law" against the Chester Township Police Department and twenty-four claims alleged against six defendants in their individual capacities. The claims are brought pursuant to federal and state law.

### A

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that a defendant is liable for the alleged misconduct. *Id.* If the court can infer only the possibility of misconduct from the "well-pleaded" facts—those supported by sufficient factual content to make them facially plausible—the complaint has not shown the pleader is entitled to relief.

*Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016).

Determining plausibility is a "context-specific task" requiring a court to use its judicial "experience and common sense." *Schuchardt*, 839 F.3d at 347 (quoting *Iqbal*, 556 U.S. at 675). The court disregards a complaint's legal conclusions, assumes well-pleaded facts are true and then determines whether those facts plausibly entitle the pleader to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Schuchardt*, 839 F.3d at 347. In doing so, the court construes well-pleaded facts in the light most favorable to the plaintiff and draws reasonable inferences from them. *Connelly*, 809 F.3d at 790.

B

In the Third Circuit, defendants may raise a statute of limitations defense in a Rule 12(b)(6) motion provided that "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.3d 1092, 1094 (3d Cir. 1975)). The bar must be "apparent on the face of the complaint" to serve as the "basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

For the purposes of a civil rights action under Section 1983, courts are to use the state statute of limitations applicable to personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985). Pennsylvania's personal injury statute of limitations is two years. 42 Pa. C.S.A. § 5524(7). Wilson's initial complaint was filed on March 7, 2022,

so all federal claims arising from the eleven interactions predating March 7, 2020 are time-barred. *See* (Compl., ECF 1; Am. Compl. 4—7).

Wilson alleges that his claims are all timely because of the "continuing wrong violation" doctrine. (Am. Compl. 7.) Wilson states that the "'continuing wrong' doctrine is an exception to the general statute of limitations rule and usually employed "where there is a series of continuing wrongs," tolling "the running of a period of limitations to the date of the commission of the last wrongful act." (*Id.*) (citations omitted).

At the motion to dismiss stage, courts must disregard alleged conclusions of law. *Connelly,* 809 F.3d at 790. The continuing violation doctrine is "not a substitute for plaintiff's awareness of and duty to assert [his] rights in a timely fashion," and it does not apply when plaintiffs are aware of the injury at the time it occurred. *Bennett v. Susquehanna Cnty. Children & Youth Servs.*, 592 F. App'x 81, 85 (3d Cir. 2014); *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 471 n.6 (3d Cir. 2003). The defendant's conduct must be "more than the occurrence of isolated or sporadic events." *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). This doctrine typically arises in the employment context, where "discriminatory acts that are not individually actionable may be aggregated." *See Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165 (3d Cir. 2013). Time-barred claims, however, "cannot be resurrected by being aggregated and labeled continuing violations." *O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006).

Here, all federal claims arising from the first eleven encounters are independently actionable. While Wilson alleges that the incidents are related because

the police department has it "out for him," they are separate occurrences that constitute standalone claims. (Am. Compl. 6 ¶ 15.) Wilson is not otherwise precluded from pursuing his individual claims and does not require the type of equitable exception to the statute of limitations that the continuing violation doctrine provides. *See Cowell*, 263 F.3d at 292. Because he had a duty to raise his claims in a timely fashion, the continuing violation doctrine does not apply here. *See O'Connor*, 440 F.3d at 128.

C

Five of the alleged incidents giving rise to some of Wilson's purported claims occurred less than two years before Wilson filed his initial complaint. For the reasons discussed below, allegations arising from Wilson's encounters with the police in that timeframe fail to state claims upon which relief could be granted.

1

Wilson lists three events in October 2020 that plainly fail to state federal causes of action. On October 19, 2020, he alleges he and a friend were stopped and detained by Chester Township Police Officers Blue and Waters. (Am. Compl. 6 ¶ 13.) He asserts the stop was without probable cause, one officer brandished a gun, and his friend was charged with illegally possessing drugs and a gun, charges that were later dropped. (*Id*.) These alleged facts alone do not state a claim. Discarding legal conclusions, Wilson has alleged no facts that would allow the Court to conclude the stop was without probable cause or that he suffered injury. Similarly, on October 24, 2020, he claims two unidentified Chester Township Police officers told him not to take his charges "personal" and that they "don't have a problem with him and don't know why command

has it out for him." (*Id*. at p. 6 ¶ 15.) Wilson has failed to show how such statements by the police could constitute a cause of action.

On October 31, 2020, Wilson contends he was a passenger in a car that was chased by police. (*Id*. at p. 6 ¶ 14.) He was charged with possession of a gun found in the car and ultimately convicted on February 16, 2023. (*Id*.; Def. Mot. Opp. Leave 7, ECF 20; Del. Cnty. Ct. Com. Pls. No. CP-23-CR-3994-2020). Because a claim for malicious prosecution requires the underlying criminal proceeding to be resolved in the plaintiff's favor, Wilson has not adequately stated a malicious prosecution claim. *See Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

2

The circumstances of Wilson's final two interactions with the police do not currently state plausible claims. On April 15, 2021 Defendant Dixon allegedly confessed to evidence tampering and told Wilson he "will not be getting his phone back." (Am. Compl. 6 ¶ 16.) The phone "contained evidence crucial to his defense" in an unrelated case. (*Id*.) Although there is no federal civil cause of action for evidence tampering, Wilson could conceivably assert a Fourteenth Amendment claim for failure to preserve potentially exculpatory evidence, see *Whatley v. Edna Mahan Correctional Facility*, No. 20-12295, 2021 WL 689153, at *3 (E.D. Pa. Feb. 23, 2021) (citing *Griffin v. Spratt*, 969 F.2d 16, 20 (3d Cir. 1992)). But to do so, he must plead facts adequately alleging Sergeant Dixon's bad faith. *See, e.g., Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). For now, he simply offers a statement with little context and admits Dixon had a warrant for the search. (Am. Compl. 12–13 ¶ 5.) Claims alleging Dixon deleted

certain videos are time-barred, as Wilson contends that occurred on or before August 1, 2019. (*Id.* at 3.)

Lastly, Wilson alleges he was pulled over on January 8, 2022 when a passenger in his car admitted to having "small amount of weed in his pocket." (Am. Compl. 7 ¶ 17.) Officers, allegedly using "false statements to obtain a warrant," towed the vehicle, searched it and "possibly removed his DNA to help strengthen" their "most recent" case against him. (*Id.*) To the extent he attempts to do so, Wilson has not properly alleged a Fourth Amendment violation. Vehicles are excluded from the general warrant requirement for a search, and his passenger's admission to carrying marijuana likely satisfies probable cause for the search. *See Collins v. Virginia*, 138 S. Ct. 1663, 1669–70 (2018). Wilson's threadbare allegation that "false statements" were used to obtain a warrant is conclusory and he does not plausibly allege that DNA was in fact wrongly taken from his car to be used against him.

3

Wilson's claims against the Police Department also come up short. In a Section 1983 suit, a municipality can be liable only when the implementation of an officially adopted policy or informally adopted custom causes the alleged constitutional violation. *Knellinger v. York Street Property Development, LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014). Local governments are "responsible only for their own illegal acts" and cannot be held "vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). An official municipal policy or custom "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at

61. To satisfy this pleading standard, the plaintiff must "specify what exactly the custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

Wilson does not specify any policy or custom in his Amended Complaint. (Am. Compl. 8—11.) At best, he argues that the Department concertedly had it "out for him" by being "aware of its unlawful behavior against [him] since at least 2017." (Am. Compl. 6 ¶ 15, 20 ¶ 10.) "Having it out" for Wilson is not the type of practice "so persistent and widespread to practically have the force of law." *See Connick*, 563 U.S. at 61.

Any claim regarding the "unconstitutional" loitering ordinance is also vague and conclusory. (Am. Compl. 8 ¶ 1.) Wilson has not alleged what the ordinance says or offered facts supporting his conclusion that it is unconstitutional. The limited instances he cites where the ordinance was enforced against him or his friends do not establish the type of "persistent and widespread" policy or custom necessary to allege a *Monell* claim. *Connick*, 563 U.S. at 61.

Wilson also attempts to assert claims under the False Claims Act, 31 U.S.C. § 3729 *et seq*. (Am. Compl. 8 ¶ 4.) He alleges that "if" Chester Township receives federal funds, their crime numbers are "undoubtedly" fraudulent because they would qualify the department for additional "high crime" funding. (*Id*.) Not only are his allegations entirely speculative, but further amendment would be futile because he "failed to follow the requisite statutory procedures for advancing such claims as set forth by 31 U.S.C. § 3730(b)" by, among other things, not filing this action under seal. *See Burns v. Lavender Hill Herb Farm, Inc.,* 167 F. App'x 891, 892 (3d Cir. 2006) (affirming the district court's dismissal with prejudice).

III

Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion to decline to exercise supplemental jurisdiction over state law claims once all claims over which the Court has original jurisdiction have been dismissed. In such a situation, it is appropriate to refrain from exercising such jurisdiction "in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.,* 540 F.3d 187, 196 (3d Cir. 1976). With the dismissal of Wilson's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims.[1]

Wilson's Motion for Leave to Amend is denied. His False Claims Act claim and all federal claims arising before March 7, 2020 are dismissed with prejudice. Any remaining claims against the individual Defendants in their official capacity are also dismissed with prejudice because they are effectively claims against the Police Department. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). His remaining federal claims against the Police Department and individual Defendants accruing after March 7, 2020; that is, claims stemming from the three October 2020 incidents, April 15, 2021 and January 8, 2022, are dismissed without prejudice. Wilson will have until June 27, 2023 to file a Second Amended Complaint if he can allege facts that adequately state Section 1983, Fourth or Fourteenth Amendment claims against any defendant for conduct during those five alleged interactions. A simple

---

[1] These claims include abuse of process, assault, battery, breach of fiduciary duty, civil conspiracy, evidence tampering, false arrest, harassment, negligent and intentional infliction of emotional distress, theft, unlawful entry and witness intimidation.

regurgitation of his current pleadings, without additional factual context, will be insufficient.

      An appropriate Order follows.

                                        BY THE COURT:

                                        */s/ Gerald J. Pappert*
                                        GERALD J. PAPPERT, J.